**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **RICHARD J. DASH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **CIVIL NO. 3:09CV433** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Richard J. Dash, seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner

denying his application for Social Security Disability benefits ("DIB").  The Commissioner's

final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was

not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

for summary judgment (docket no. 12) be GRANTED; that Defendant's motion for summary

judgment (docket no. 15) be DENIED; and that the final decision of the Commissioner be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

REVERSED and REMANDED for further administrative proceedings in accordance with this report and recommendation.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on October 5, 2005, claiming disability due to double cervical spinal fusion with nerve damage, anterior tear in L4-L5 disc, depression and anxiety, and ADHD, with an alleged onset date of February 25, 2005. (R. at 134-35, 141.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 75, 93.) On July 10, 2007, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 406-54.) On July 25, 2007, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 72-80.) The Appeals Council subsequently remanded the case to the ALJ for further proceedings. (R. at 82-84.) The ALJ then held a second hearing on September 11, 2008, at which Plaintiff, again represented by counsel, testified. (R. at 459-95.) The hearing was suspended after an hour, but resumed on December 9, 2008, when Plaintiff and a vocational expert ("VE") testified. (R. at 501-31.) On January 7, 2009, the ALJ again denied Plaintiff's application, finding, as the ALJ had previously, that Plaintiff was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 27-36.)

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 7-9.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The

Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. <u>Perales</u>, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; <u>Mastro</u>, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. <u>Id.</u> If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of

_____

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his

burden in the final step with the testimony of a vocational expert ("VE").  When a VE is called

to testify, the ALJ's function is to pose hypothetical questions that accurately represent the

claimant's RFC based on all evidence on record and a fair description of all the claimant's

impairments so that the VE can offer testimony about any jobs existing in the national economy

that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when

the hypothetical posed represents *all* of the claimant's substantiated impairments will the

testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.

20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset

of his disability.  (R. at 29.)  At steps two and three, the ALJ found that Plaintiff had the severe

impairments of affective disorder and degenerative disc disease of the lumbar spine, but that

these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix

1, as required for the award of benefits at that stage.  (R. at 29-31.)  The ALJ next determined

that Plaintiff had the RFC to perform sedentary work, except that he is limited to unskilled,

simple work requiring only limited contact with the general public; he cannot work around

hazards such as unprotected heights and/or dangerous/moving machinery; and he must be in a

position that allows him to change positions (sit/stand) at will.  (R. at 31-34.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his

past relevant work as an information technology consultant, a sales person, or a business manager, because of the levels of exertion required for each position. (R. at 34.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 35.) Specifically, the ALJ found that Plaintiff could work as a document preparer, an order clerk, or a charge account clerk. (R. at 35.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 35-36.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ improperly evaluated Plaintiff's credibility; (2) the ALJ improperly discounted the opinions of Plaintiff's treating physicians; (3) the ALJ failed to consider Plaintiff's medications and resulting side effects in his RFC analysis; and (4) the ALJ erred by posing a hypothetical to the VE that did not include all of Plaintiff's limitations. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 6-17.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 12-21.)

### A. The ALJ's evaluation of Plaintiff's credibility is not supported by substantial evidence, nor did the ALJ apply the correct legal standard.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by

the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility

determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Here, it appears that the ALJ based his credibility finding on misunderstandings of Plaintiff's statements that resulted in an inadequate assessment. Specifically, the ALJ noted that Plaintiff was a coach for his children's sports teams for "a while" after his alleged onset date, but that he does not coach anymore. (R. at 31.) The ALJ also noted that Plaintiff mowed his lawn and attended church. (R. at 32.) Further, the ALJ repeatedly noted that a third child was born to Plaintiff and his wife since he applied for disability, and that Plaintiff took care of his infant son while his wife worked. (R. at 32, 34.) The ALJ also found that Plaintiff stated that he could sit for only twenty minutes, but then stated that he used his computer for up to thirty minutes. (R. at 32.) The ALJ noted that Plaintiff also testified that he was in constant pain; slept on and off during the day; had problems concentrating and remembering; could carry less than eight pounds; could stand for thirty minutes; rarely went to the second floor of his home; spent about two hours a day in a recliner; and had severe pain the day after attending one of his children's sporting events. (R. at 31-32, 469-73, 476-86, 506, 513.) The ALJ then concluded that

Plaintiff's allegations were not entirely credible because they were not consistent with his RFC assessment, written documentation submitted by Plaintiff for the record, or the medical evidence of record. (R. at 32.)

However, the ALJ misunderstood the uncontradicted evidence. First, Plaintiff did not, in fact, attend church. His unchallenged testimony was that he used to attend church on a weekly basis, but he no longer did; instead, his wife accompanied his children to church and he could not remember the last time he had attended himself. (R. at 431-32, 485.) Second, Plaintiff was never really a coach for his children's teams. Plaintiff testified that he was an assistant coach whose function was to keep all the kids from "killing each other while the rest of the coaches were actually giving instruction," and that he did not perform such tasks on a regular basis (R. at 410); Plaintiff also testified that while he was issued a coaching hat, he was only told to "show up when you can," but that he had no obligation to do so and, in fact, missed more practices than he made; and while he attended all of the games, he never rose off the bench except to stretch when his back got sore from sitting too long. (R. at 462-63.) Third, the ALJ noted that Plaintiff mowed his lawn, based on Plaintiff's testimony. However, the ALJ simply asked Plaintiff if he did anything that someone else would normally be paid to do, to which Plaintiff responded "nothing beyond cutting the grass." (R. at 411.) Such is the extent of Plaintiff's statements concerning the activity, and there is nothing in the record that indicates the frequency with which Plaintiff mowed his lawn; nor is there any evidence as to whether the lawn mower was one that could be ridden or pushed, or what physical repercussions Plaintiff might have experienced after doing so. The ALJ also found that there was a discrepancy between Plaintiff stating that he could sit for only twenty minutes, but used his computer for up to thirty minutes. (R. at 32, 513.)

Such a discrepancy does not necessarily give rise to a determination that Plaintiff is not credible; and further, while Plaintiff testified that he can sit for longer periods, he also confirmed that the physical repercussions were greater when he did so. (R. at 513.) Finally, the ALJ erroneously concluded that Plaintiff and his wife had a third child since his alleged onset date. Defendant recognizes the ALJ's error, but argues that the ALJ's decision is still supported by substantial evidence. (Def.'s Mem. at 14.) However, the ALJ mentions the circumstance involving Plaintiff's "infant son" twice in his opinion, which implies that the factor contributed to his conclusion that Plaintiff was not entirely credible. (R. at 32, 34.)

An ALJ "cannot 'pick and choose' only the evidence that supports his position." <u>Harris v. Comm'r of Soc. Sec.</u> 2005 WL 1162530 at *8 (E.D. Va. May 12, 2005) (quoting <u>Loza v. Apfel</u>, 219 F.3d 378, 393 (5th Cir. 2000)); <u>see also</u> <u>Switzer v. Heckler</u>, 742 F.2d 382, 385 (7th Cir. 1984). Here, the ALJ discussed certain aspects of the record that contributed to his overall assessment of Plaintiff's credibility, but he disregarded and did not even reference other evidence that appears to corroborate Plaintiff's allegations of pain and its limitations, including the treatment records of multiple physicians.

The record indicates that Plaintiff has experienced back problems since at least August of 2001. (R. at 160.) As Plaintiff notes in his brief, he underwent several procedures to relieve his pain prior to the alleged onset date of his disability. (Pl.'s Mem. at 7, R. at 160-66.) In September of 2005, Plaintiff underwent an intracervical discectomy[6] and fusion at C5-6 and C6-7 for his degenerative disc disease. (R. at 188.) In October of 2005, Plaintiff reported to

_____

[6] The excision of an intervertebral disc. <u>Dorland's Illustrated Medical Dictionary</u> 553 (31st ed. 2007).

11

orthopeadist Dr. Michael J. Decker that his medication was "just not working" to relieve his pain. (R. at 251.) In January of 2006, Plaintiff reported to Dr. Decker that he was doing a little better, yet over the next several months he continued to report significant pain. (R. at 263-83.) In March of 2006, the ALJ noted that Plaintiff's MRI showed decompressed central canal and foramina bilaterally at the C5-6 and C6-7 levels, the C4-5 level had not advanced in its degeneration or protraction of discs, and the foramina were wide open. (R. at 33, 199.) However, the ALJ did not address Dr. Rajesh V. Mehta's assessment that Plaintiff continued to have multilevel joint complaints, that there were probably some undiagnosed arthritic diseases, and that Dr. Mehta would support Plaintiff for social security disability. Nevertheless, the ALJ did note that Plaintiff stated during the visit that his ongoing lower back problems had resurfaced. (R. at 33, 199.) Moreover, in July of 2006, Plaintiff reported to Dr. Decker that his back was doing "about the same," that he only left the house once or twice a week, and that he engaged in very little physical activity. (R. at 265.) It is also worthy of note that Dr. Decker assessed Plaintiff with continued severe spine tightness due to degenerative disc disease. (R. at 265.)

Furthermore, records from September of 2006 indicate that Plaintiff's pain had increased. (R. at 263.) While the ALJ noted that in that same month, Plaintiff reported to Dr. Mehta significant improvement compared to preoperative condition, the ALJ again failed to consider the remainder of the record from that particular visit. (R. at 33, 358.) Indeed, Plaintiff also stated at the time that he was significantly improved compared to preoperative condition, yet he also indicated that there was residual pain that disappointed him, and that while his pain had plateaued after three months, he had not improved since the last time he had visited Dr. Mehta.

(R. at 358.)  Dr. Mehta further noted in that visit that there was a possibility that some pseudoarthrosis[7] could be contributing to Plaintiff's discomfort, but there was "some residual that might be permanent based on his previous level of disability."  (R. at 358.)  In September of 2007, Dr. Mehta noted that Plaintiff continued to improve; however, he had stabilized to a point of some chronicity of neck pain.  (R. at 384-85.)  Plaintiff also saw Dr. Clark in September of 2007, who recommended that Plaintiff change his pain medication to a different form of pain management, to which Plaintiff agreed in principle, but he did not think there was any other way to manage his pain.  (R. at 394.)  The ALJ noted that during this visit, Plaintiff reported intermittent back pain.  (R. at 33.)  In this same regard, the record indicates that intermittent back pain was listed under Plaintiff's past history, along with depression.  (R. at 393.)  In July of 2008, Plaintiff reported neck, low back, and upper and lower extremity pain, which had been getting worse for the past few months, and which was constant at a level of 8/10.  (R. at 379.)  Plaintiff also indicated that he was taking several different medications, yet none of them were effective in easing his pain.  (R. at 379.)  Plaintiff further indicated that sitting in any specific position would increase his pain, but changing position and lying down gave him some degree of relief, as seems reasonable – and credible.  (R. at 379.)  Notes from that same visit indicate that Plaintiff was slightly forward flexed and walking slowly, but that Plaintiff could walk heel to toe; also, it was noted that Plaintiff's range of motion of his cervical spine seemed to be stiff in all planes.  (R. at 379.)  In August of 2008, Dr. Mehta noted that Plaintiff experienced dramatic

_____

[7] Pseudoarthrosis is "a pathologic entity characterized by deossification [(loss of or removal of bone)] of a weight-bearing long bone, followed by bending and pathologic fracture, with inability to form normal callus leading to existence of the 'false joint' that gives the condition its name."  Dorland's at 496, 1563-64.

improvement after extensive conservative management, but that Plaintiff had recently experienced increasing pain and his quality of life remained hampered by the pain in both his neck and back.  (R. at 374-76.)  Dr. Mehta further noted that Plaintiff experienced fatigue due to his overall condition and his medication regimen; that he had full strength in his extremities with the exception of his right deltoid; that a new component might be causing Plaintiff's increased symptoms; and that Plaintiff had underlying spondylitic[8] pain of chronicity that may never be able to be resolved by surgery.  (R. at 374-76.)  Dr. Mehta and Plaintiff agreed to attempt conservative management of Plaintiff's issues, but they also discussed surgical options which would be an "extreme last resort."  (R. at 375, 384.)  Indeed, an MRI of Plaintiff's C-spine in August of 2008 revealed a new, adverse finding in his C3-4 and C4-5 levels since 2006, and an MRI of his L-Spine indicated degenerative disc disease.  (R. at 377-78, 381-82.)

With regard to Plaintiff's alleged depression, the ALJ noted that though Plaintiff testified to continued treatment, no additional treatment notes that would substantiate treatment after February of 2007 were submitted.  (R. at 34.)  However, the record contains notes from Dr. Jefferson Sommers, a psychiatrist, dated from June of 2007 to August of 2008.  (R. at 363-68.)  Further, Dr. Sommers filled out a form on December 11, 2008, which noted that he had been seeing Plaintiff every three months since March of 2006.  (R. at 398-99.)  The ALJ also noted that, in regard to Plaintiff's visits to Dr. Sommers prior to February of 2007, Plaintiff was seen primarily for medication checks.  (R. at 34.)  Indeed, Plaintiff admitted as much in his hearing testimony, but he also stated that he could not afford to see both a psychiatrist and a psychologist at the same time.  (R. at 436-37, 473.)  Instead, Plaintiff saw a doctor who could prescribe

_____

[8] Pain pertaining to or characterized by inflammation of the vertebrae.  Dorland's at 1779.

medications for him, and during those brief visits Dr. Sommers would also provide a limited form of counseling. (R. at 473.) Regardless, the fact that the ALJ did not consider the evidence that substantiated Plaintiff's claims of continued treatment for his depression is notable in that greater weight may have been given to Plaintiff's credibility had he considered such evidence.

The ALJ also noted that Plaintiff has had very sporadic and conservative treatment since his initial surgery. (R. at 34.) However, if a claimant cannot afford treatment, he cannot be penalized for such failure. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986), Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984). Like the claimant in Lovejoy, and as noted earlier, while employed, Plaintiff sought medical treatment several times in an attempt to receive pain relief. (Lovejoy, 790 F.2d at 1117, R. at 160-70.) Furthermore, after he ceased working, Plaintiff underwent a disectomy and fusion procedure. (R. at 356.) Plaintiff also testified that he stopped taking some medications because he could not afford them anymore, and that he had refused epidural injections for similar reasons. (R. at 515-16.) Plaintiff's statements were not contradicted or otherwise challenged. As noted earlier, Plaintiff testified that he could not afford to see a doctor to prescribe medications for his depression as well as a doctor to counsel him for his depression. (R. at 473.) Also, Plaintiff and his physician discussed surgery as an option, but both agreed that it would be an extreme last resort, and that they would continue conservative management of his pain and back and neck issues in the meantime. (R. at 375.) As the Fourth Circuit has held, it is "erroneous to consider a claimant's failure to seek treatment as a factor in the determination that [his] impairment is not severe as it would be to reach the ultimate conclusion that the claimant is not disabled because [he] failed to follow prescribed treatment when that failure is justified by lack of funds." Lovejoy, 790 F.2d at 1117.

Finally, the ALJ appears to have disregarded Plaintiff's past work history. Nowhere in his opinion did the ALJ note that until Plaintiff's alleged onset date of disability, Plaintiff had been performing in a skilled or highly skilled position, earning more than $100,000 each year for the five years before he ceased working. (R. at 441, 486, 511-13, 516-17.) Such information, while not dispositive in determining whether or not Plaintiff is disabled, should have been considered by the ALJ. Since a claimant is entitled to substantial credibility when he has a favorable work history, so should he when he then asserts, and substantiates, a failure to work. See Dobrowsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979), Tyson v. Apfel, 107 F. Supp. 2d 1267, 1270-71 (D. Colo. 2000), Rieder v. Apfel, 115 F. Supp. 2d 496, 505 (M.D. Pa. 2000).

Accordingly, it is recommended that the ALJ's analysis of Plaintiff's credibility is not supported by substantial evidence, nor is the ALJ's conclusion the result of application of the correct legal standard. Therefore, Plaintiff's case should be remanded for a legitimate credibility determination that takes into account all evidence of record.

**B.    The ALJ did not apply the correct legal standard when evaluating the opinions of DDS and Plaintiff's treating physicians.**

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence.

See 20 C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved.  20 C.F.R. § 416.927(c)(2), (d).  Under the applicable regulations, the opinions of state agency medical and psychological consultants must be treated as expert opinion evidence from nonexamining sources.  SSR 96-6p.  Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p.  However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005).  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Here, the ALJ did not properly analyze the opinions of state agency consultant Dr. Fielding, or Plaintiff's treating physician, Dr. Sommers.  With regard to Plaintiff's treating physicians, the ALJ simply noted that no treating physician had expressed an opinion regarding Plaintiff's abilities to perform work-related functions.  (R. at 34.)  However, as Plaintiff alleges, Dr. Sommers submitted a treating physician's opinion, which, among other things, stated that Plaintiff's severity of symptoms had a major detrimental impact on even basic functioning.  (R. at 398.)  Defendant argues that the opinion does not qualify as a treating physician's opinion, because Dr. Sommers noted that he did not perform functional capacity evaluations and did not

"check" any boxes under the functional capacity assessment.  (Def.'s Mem. at 19, R. at 398-99.)
Defendant further argues that "the ALJ properly accorded his opinion no weight."  (Def.'s Mem.
at 19.)  However, the Court cannot accept such reasoning, as the ALJ never addressed the
evidence in his opinion.  In fact, the ALJ incorrectly stated there were no treatment records from
Dr. Sommers beyond February of 2007, as there were.  (R. at 34.)  Therefore, the Court cannot
infer why the ALJ accorded Dr. Sommers's opinion no weight, as it appears that the ALJ never
considered the evidence at all.

   At the same time, it appears that there is a sufficient basis for the ALJ to have discounted
Dr. Mehta's opinion(s).  While Plaintiff alleges that Dr. Mehta submitted a treating physician
opinion, it appears from the record that while there are ample treatment notes regarding
Plaintiff's condition, Dr. Mehta never opined on Plaintiff's ability to perform work-related
functions, other than on an IRS disability form.  (R. at 206.)  Such a document is not an adequate
treating physician's opinion, as it is an opinion on whether Plaintiff is disabled for purposes of
employment.  As noted earlier, that issue is one reserved to the Commissioner.  Dr. Mehta also
noted in treatment records that he would support Plaintiff in his application for disability, yet he
did not give specific reasons for his willingness to do so.  (R. at 199.)  Dr. Mehta has not
completed any kind of form specifically related to Plaintiff's abilities to perform work-related
functions.  Nevertheless, the ALJ discounted both Dr. Mehta's and Dr. Sommers's opinions.

   With regard to the opinion of state agency consultant Dr. Fielding, the ALJ merely stated
that the weight accorded to state agency medical and psychological consultants "was not a
controlling weight."  (R. at 34.)  Such a statement is ambiguous, in that it fails to provide the
Court with at least an approximate indication of the weight assigned.  "Not a controlling weight"

could mean any level of weight not considered "controlling." As a result, the Court can only speculate as to how the ALJ factored Dr. Fielding's opinion into his overall RFC assessment. Furthermore, the ALJ's reasoning for concluding that Dr. Fielding's opinion was inconsistent with the longitudinal evidence is insufficient, and not supported by substantial evidence. (R. at 34.) As noted earlier, Plaintiff has presented numerous treatment records regarding his depression, which seem to corroborate Dr. Fielding's opinion, yet most of which were not considered by the ALJ. Furthermore, the ALJ's insufficient credibility analysis raises the question of whether or not the ALJ would have accorded Dr. Fielding's opinion a different, if not controlling weight, if he had found the Plaintiff to be more credible, which might further substantiate the physician's opinion.

The Court cannot engage in mere conjecture and speculation as to what the ALJ may or may not have considered when rendering his conclusions. Therefore, the Court concludes that the ALJ's findings are not supported by substantial evidence or application of the correct legal standard. Accordingly, because the ALJ did not sufficiently address the opinions of both Dr. Fielding and Dr. Sommers, the Court recommends a finding that Plaintiff's case be remanded for further development of the record in regard to the issue.

**C.    The ALJ failed to sufficiently address Plaintiff's medication regime and the side effects of those medications, as required in C.F.R. § 404.1529, in his RFC analysis.**

The ALJ noted that Plaintiff was no longer taking lithium or Celebrex, that he stopped physical therapy because it was not helping, and that Plaintiff was "tolerating [depression] medications well." (R. at 32-34.) However, Plaintiff testified, and reported to his physicians, that his medications caused fatigue and loss of concentration that required him to rest or sleep for

a total of two to four hours a day. (R. at 374-76, 518.) Defendant argues that drowsiness from

medications does not constitute a significant side effect, and that Plaintiff did not complain to his

doctors about disabling side effects from his medications. (Def.'s Mem. at 16, citing Burns v.

Barnhart, 312 F.3d 113, 131 (3d Cir. 2002).) However, records indicate that Plaintiff did, in fact,

mention to his doctors on at least one occasion that he suffered adverse side effects from his

medications. (R. at 374-76.) Defendant further argues that the ALJ accommodated any side

effects that Plaintiff might have experienced by restricting him from working around hazards.

(Def.'s Mem. at 16.) However, Defendant apparently infers the ALJ's reasoning for restricting

Plaintiff from working around hazards, as the ALJ never explicitly discussed Plaintiff's

medications or their potential side effects with regards to his employment capabilities, as

required by 20 C.F.R. § 404.1529. The ALJ only briefly mentioned, at step four of the analysis,

that Plaintiff's ability to perform his past skilled and semi-skilled work was "precluded by his

nonexertional limitations due to pain, medication side effects and psychologically based

symptoms." (R. at 34.) Such a statement is insufficient. Accordingly, the Court recommends a

finding that the ALJ did not apply the correct legal standard in evaluating Plaintiff's RFC.

> **D.** **Though the ALJ posed a proper hypothetical to the VE that included all limitations the ALJ found to be reasonable, such hypothetical was the result of an insufficient RFC analysis, and, therefore, was unsubstantiated.**

Because the Court recommends a finding that the ALJ failed to properly evaluate

Plaintiff's credibility, RFC, and treating physician opinions, it is unnecessary to evaluate the

hypothetical posed to the VE. Instead, the Court recommends that Plaintiff's case be remanded

and reevaluated consistent with this opinion, and that a new hypothetical be posed to the VE that

accurately reflects a RFC supported by the record as a whole.

## V. CONCLUSION

Although the Court concludes that the record does not provide substantial evidence to sustain the ALJ's conclusion that Plaintiff is not disabled, the Court is unable at the same time to recommend an outright award of benefits. The Court cannot make a finding on Plaintiff's credibility, as that is more properly assessed initially on the administrative level. The Court is mindful of the prolonged period of time that the matter has been pending and, therefore, if remanded, it is recommended that the ALJ expedite the process by reconsidering Plaintiff's application in light of this report; that Plaintiff's most recent medical records be reviewed; that a consultative examination be scheduled with appropriate medical testing if any material confusion or ambiguity is perceived in the resulting record; and that a final administrative decision be issued in which all findings are sufficiently articulated and substantiated, including any credibility determinations, as would be sufficient for possible judicial review.

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 12) be GRANTED; that Defendant's motion for summary judgment (docket no. 15) be DENIED; and, that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: April 13, 2010
Richmond, Virginia